THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS CARRILLO LOPEZ,<br><br>Defendant. | CASE NO. MJ20-0020-JCC<br><br>ORDER |

This matter comes before the Court on Defendant Carlos Carrillo Lopez's motion for review and revocation of a detention order (Dkt. No. 54). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for the reasons explained herein.

**I.   BACKGROUND**

On January 16, 2020, the FBI raided Mr. Carrillo Lopez's Renton residence, where he lived with his father and four minor siblings. (Dkt. No. 1 at 5.) During that raid, the FBI discovered large amounts of suspected methamphetamine and cocaine. (*See id.* at 5–6.) The FBI also discovered a loaded pistol in the pocket of Mr. Carrillo Lopez's pants and a loaded rifle and a bulletproof vest in his personal bedroom. (*See id.*)

That same night, the FBI conducted a parallel raid at the residence of Humberto Lopez

Rodriguez, Mr. Carrillo Lopez's brother.[1] (*See id.* at 6.) At Mr. Lopez Rodriguez's home, the FBI found over 28 pounds of heroin, 15 pounds of methamphetamine, and several thousand pills marked as oxycontin, although the FBI's report lists the pills as "suspected fentanyl." (*See id.*) The FBI also found body armor and nine firearms, three of which were semi-automatic assault rifles. (*See id.* at 6–7.) Most of the firearms were loaded and none were properly secured. (*See id.*) And in a car parked in Mr. Lopez Rodriguez's driveway, the FBI discovered a loaded pistol strapped under the driver's side dashboard. (*See* Dkt. No. 56-4 at 2.) Both Mr. Carrillo Lopez and Mr. Lopez Rodriguez were arrested and detained following the raids. (*See* Dkt No. 11.)

The Government moved for pretrial detention of Mr. Carrillo Lopez under 18 U.S.C. § 3142(e) and (f), citing three reasons: (1) he faces a drug offense with a maximum sentence of more than 10 years; (2) the alleged offense involved possession of a firearm; and (3) there was a serious risk that he would flee if not detained. (*See* Dkt. No. 11 at 1–2.) The Government also argued that Mr. Carrillo Lopez's appearance would be required again and that he posed a risk to the safety of the community. (*See id.* at 2.)

On January 31, 2020, the Honorable Brian A. Tsuchida, United States Magistrate Judge, ordered Mr. Carrillo Lopez detained pending trial after a contested detention hearing. (Dkt. No. 27 at 1.) Judge Tsuchida found that pretrial detention was appropriate because Mr. Carrillo Lopez "is charged with committing a large-scale drug operation with a relative and possessing an assault rifle and loaded pistol. He faces significant prison time if convicted and as he does not have legal status[,] has the incentive to leave the jurisdiction."[2] (*See id.* at 1–2.)

On April 27, 2020, Mr. Carrillo Lopez filed a motion to reopen his detention hearing

---

[1] The Government now refers to this residence as Mr. Carrillo Lopez's "stash house." (*See* Dkt. No. 50 at 3.)

[2] Mr. Lopez Rodriguez, the co-Defendant in the instant matter, was conditionally released on bond with special conditions on April 1, 2020. (*See* Dkt. Nos. 44–45.)

ORDER
MJ20-0020-JCC
PAGE - 2

under 18 U.S.C. § 3142(f) or, in the alternative, for temporary release.[3] (*See* Dkt. No. 49 at 1–2.) Following a telephonic hearing on April 29, 2020, Judge Tsuchida denied Mr. Carrillo Lopez's motion to reopen the detention hearing and denied him pretrial release. (*See id.*) On May 5, 2020, Mr. Carrillo Lopez filed the instant motion for review of Judge Tsuchida's denial pursuant to 18 U.S.C. § 3145(b).[4] (*See* Dkt. No. 54.)

## II.  DISCUSSION

Pursuant to the Bail Reform Act of 1984, as amended, Congress has determined that "any person charged with an offense under the federal criminal laws shall be released pending trial, subject to appropriate conditions." *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015). "Only in rare circumstances should [pretrial] release be denied." *United States v. Motamedi*, 767 F.2d 1403, 1404 (9th Cir. 1985). This presumption reflects the essential principle that "[i]n our society liberty is the norm, and detention prior to trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). That exception is to be invoked "only for the strongest of reasons." *Sellers v. United States*, 89 S. Ct. 36, 38 (1969) (Black, J., in chambers). Such strong reasons are present in this case.

### A.  Legal Standard

A defendant's appeal of a magistrate judge's detention order is governed by 18 U.S.C. § 3145(b), which provides that "[i]f a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for

---

[3] Mr. Carrillo Lopez cites to 18 U.S.C. § 3142(i)(3) as the statutory authority supporting his request for temporary release. That provision is unrelated to the actual relief Mr. Carrillo Lopez seeks. Moreover, "temporary release" is afforded to *prisoners* under discrete circumstances. *See* 18 U.S.C. § 3622. Thus, the Court will assume Mr. Carrillo Lopez seeks pretrial release pursuant to 18 U.S.C. § 3142.

[4] In light of General Order 08-20, the grand jury is currently suspended in order to reduce the spread of, and health risks posed by, COVID-19. Accordingly, the Government has not obtained an indictment against Mr. Carrillo Lopez or his co-Defendant. Four extensions have been granted to allow the Government to obtain indictments. (*See generally* Dkt. Nos. 28, 36, 48, 58). The most recent extension was granted on June 5, 2020, and allows the Government until August 28, 2020, to obtain an indictment. (*See* Dkt. No. 58.)

revocation or amendment of the order." Pretrial detention orders are reviewed *de novo*. *See* 18 U.S.C. § 3145(b); *United States v. Koenig*, 912 F.2d 1190, 1192–93 (9th Cir. 1990). The district court thus reviews the evidence that was before the magistrate judge and any additional evidence proffered by the parties in order to "make its own independent determination whether the magistrate's findings are correct with no deference." *Koenig*, 912 F.2d at 1193.

"Where, as here, there is probable cause to believe that the defendant has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed, there is a rebuttable presumption that 'no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community.'" *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (quoting 18 U.S.C. § 3142(e)). Although the presumption shifts a burden of production to the defendant, the burden of persuasion remains with the government. *See United States v. Rodriguez,* 950 F.2d 85, 88 (2d Cir. 1991). A finding that a defendant is a danger to any other person or the community must be supported by "clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(B). The government may demonstrate a risk of flight by a preponderance of the evidence. *See United States v. Diaz-Hernandez*, 943 F.3d 1196, 1198 (9th Cir. 2019).

If, after the defendant meets the burden of production, the government does not meet its burden of persuasion, then the court must impose "the least restrictive" condition, or set of conditions, that will create such an assurance. *See* 18 U.S.C. § 3142(c)(1)(B). In determining whether there are conditions of release that will reasonably assure the safety of any other person and the community, the court considers (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the defendant's personal characteristics and history; and (4) the seriousness of the danger the defendant may pose to the community upon release. 18 U.S.C. § 3142(g); *see also Diaz-Hernandez*, 943 F.3d at 1199 (explaining that the court must conduct an "individualized evaluation" based on statutory factors in 18 U.S.C. § 3142(g)).

//

**B.      Risk of Nonappearance and Danger to the Community**

To justify pretrial detention of a defendant, the government must prove by a preponderance of the evidence that the defendant poses a flight risk that no condition or combination of conditions can address. *See Motamedi*, 767 F.2d at 1407. To detain a defendant based on dangerousness, the court must have an abiding conviction that even with some combination of conditions, it is highly probable that the defendant poses a danger to the community. *See* 18 U.S.C. § 3142(g). Given the difficult nature of this inquiry, the 18 U.S.C. § 3142(g) factors guide the analysis below.

1.      <u>Nature and circumstances of the offense charged</u>

First, the Court considers whether the nature and circumstances of Mr. Carrillo Lopez's alleged underlying criminal conduct weigh in favor of his pretrial release. 18 U.S.C. § 3142(g)(1). Mr. Carrillo Lopez stands accused of serious drug offenses, including possession of methamphetamine with intent to distribute and possession of heroin with intent to distribute. These charges reflect a serious disregard for the personal safety of others and a fundamental disrespect for the law. And the circumstances of Mr. Carrillo Lopez's crimes are even more concerning in light of the third charge: possession of firearms in furtherance of a drug trafficking crime. Thus, the nature of the charged offenses is serious, and the circumstances reflect Mr. Carrillo Lopez's willingness to protect his enterprise with lethal force.

Mr. Carrillo Lopez does not dispute the seriousness of the offenses with which he is accused; instead, he argues that he did not threaten or attempt to physically harm any particular person. (*See* Dkt. No. 54 at 4, 8.) The Court is reluctant to entertain the idea that Mr. Carrillo Lopez's alleged offenses are somehow less serious because he did not threaten or physically harm any particular individual. Indeed, Mr. Carrillo Lopez's argument glosses over the dangerousness of storing significant amounts of methamphetamine and cocaine where minors could have easily accessed the drugs. Likewise, it overlooks the dangerousness of the drugs Mr. Carrillo Lopez is charged with distributing.

Thus, the nature and circumstances of Mr. Carrillo Lopez's charged offenses are very dangerous. Therefore, the Court FINDS pretrial release is not appropriate in light of this factor.

        2.    <u>Weight of the evidence</u>

Turning to the second factor, the weight of the evidence against Mr. Carrillo Lopez is substantial. The strength of the government's case is the least important among factors considered under Bail Reform Act. *See Motamedi*, 767 F.2d at 1404. In assessing the weight of the evidence, the court may not make a pretrial determination of guilt. *Id*. at 1408. Rather, the court considers the weight of the evidence "only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community." *Id.* Even when the evidence strongly weighs in favor of conviction, release is nevertheless appropriate if the community's safety and future appearances before the Court can be "reasonably assured" by release conditions. *Id.*

When the two target residences were raided in January 2020, the FBI discovered significant quantities of methamphetamine, heroin, cocaine, oxycontin pills, and paraphernalia associated with drug distribution. (*See* Dkt. No. 1 at 5–6.) The FBI also found a loaded gun under Mr. Carrillo Lopez's mattress, another in the pocket of his sweatpants, and nine other guns at the second residence. (*See id.* at 5.) Although the Court makes no determination as to Mr. Carrillo Lopez's guilt, it acknowledges the strength of the evidence against him. *See Motamedi*, 767 F.2d at 1408.

The Government correctly points out that Mr. Carrillo Lopez, once indicted, faces a mandatory minimum sentence of 15 years and a Sentencing Guidelines range of 19 to 24 years. This lengthy potential sentence could incentivize Mr. Carrillo Lopez to flee the jurisdiction of the Court. The Court acknowledges that Mr. Mr. Carrillo Lopez has community ties in the Western District of Washington, including that he has lived here since he was four years old and that he has many immediate family members in the area. (*See* Dkt. No. 49 at 26.) Yet these community connections are not enough to overcome the fact that Mr. Carrillo Lopez faces a

lengthy prison sentence based on the weight of the evidence against him. Thus, the Government has presented sufficient evidence to meet its burden under the preponderance of evidence standard. *See Diaz-Hernandez*, 943 F.3d at 1198. Therefore, the Court FINDS that pretrial release is not appropriate in light of the second factor.

### 3. Mr. Carrillo Lopez's history and characteristics

The third factor requires the court to consider the history and characteristics of a defendant, including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings."[5] 18 U.S.C. § 3142(g)(3).

Two aspects of Mr. Carrillo Lopez's background merit particular emphasis in light of the aforementioned statutory factors. Mr. Carrillo Lopez has been unemployed since February 2019 and can no longer work as a construction laborer, his last reported form of legal employment, due to a back injury. (*See* Dkt. No. 25 at 3.) When he was arrested, his mother believed he was employed because he was paying her rent every month. (*See id.*) But Mr. Carrillo Lopez reports having no income or assets, and owes at least $6,000 in medical bills, child support, and traffic tickets. (*See id.*) These factors may cause significant financial stress if he is released.

In addition, in January 2019 Mr. Carrillo Lopez was convicted of fourth degree domestic violence after assaulting his girlfriend, who is also the mother of his children. (*See* Dkt. No. 56 at 6.) In fact, Mr. Carrillo Lopez was on probation for the 2019 assault when he committed the alleged criminal conduct underlying this case. (*See* Dkt. No. 25 at 5.) The Government suggests that because Mr. Carrillo Lopez committed his domestic violence offense relatively recently, placing him in a domestic setting pending trial is a stressor that could trigger additional violent outbursts. (*See* Dkt. No. 56 at 12.) As reprehensible as his conduct was, Mr. Carrillo Lopez

---

[5] Mr. Carrillo Lopez's physical condition is separately discussed below with regard to the COVID-19 pandemic.

served his time for that offense and the Government has not presented evidence of additional instances of domestic violence. Nonetheless, the fact that Mr. Carrillo Lopez was on probation when he committed the alleged offenses at issue in this case is problematic.

Therefore, the Court FINDS the Government's concerns about Mr. Carrillo Lopez's history and characteristics cannot be mitigated by less restrictive conditions than detention.

### 4. Danger to the community

The fourth factor requires the Court to consider the nature and seriousness of the danger to any person or the community that would be posed by Mr. Carrillo Lopez's release. *See* 18 U.S.C. § 3142(g)(4). Mr. Carrillo Lopez is accused of operating a drug distribution enterprise, an activity that inherently endangers the community. This danger was compounded by the arsenal of weapons discovered in Mr. Carrillo Lopez's personal residence and at Mr. Lopez Rodriguez's residence. (*See* Dkt. No. 1 at 5–7.) Moreover, Mr. Carrillo Lopez stored these drugs and weapons in a home where he lived with his four minor siblings. (*See* Dkt. No. 56-1 at 2.) Mr. Carrillo Lopez's behavior was wanton and reckless and reflects a serious disregard for the dangerousness of the underlying conduct to both the community and his own family.

Thus, Mr. Carrillo Lopez stands accused of conduct that reflects a significant danger to the community and less restrictive conditions than detention cannot sufficiently assure the community's safety. Therefore, the Court FINDS that pretrial release is not appropriate in light of the fourth statutory factor.

### C. Special Consideration of COVID-19

Finally, in light of the COVID-19 pandemic and Mr. Carrillo Lopez's underlying health conditions, the Court will also consider the potential danger of detaining him. *See United States v. Cosgrove*, CR15-0230-RSM, Dkt. No. 95 at 10–11 (W.D. Wash. Apr. 15, 2020) (reviewing and granting the defendant's motion for compassionate release because his health conditions made him particularly vulnerable to COVID-19 and because he was being held in a facility that was experiencing an outbreak of COVID-19).

Mr. Carrillo Lopez argues that he should be released because "ongoing detention puts him at serious risk of infection from coronavirus." (Dkt. No. 54 at 4.) The Court is acutely aware of the risk that COVID-19 poses to certain people who are detained or incarcerated. *See Cosgrove*, CR15-0230-RSM, Dkt. No. 95 at 10–11. Other branches of government have recognized that risk too: the Attorney General, for example, recently issued guidance to the Bureau of Prisons for transferring certain at-risk inmates to home confinement. Office of the Attorney General, *Memorandum for Director of Bureau of Prisons: Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic* 1 (March 26, 2020). But the risk posed by COVID-19 does not justify releasing every person who is detained pending trial or sentencing. *See United States v. Jefferson*, 2020 WL 1332011, slip op. at 1 (D. Md. 2020); *United States v. Hamilton*, 2020 WL 1323036, slip op. at 2 (E.D.N.Y. 2020). In other words, not all defendants are members of an identified risk group, and some defendants must be detained due to a risk of flight or danger to the community that cannot be managed through specific conditions for release.

Here, Mr. Carrillo Lopez has presented medical evidence that demonstrates he is a member of an at-risk population.[6] (*See* Dkt. No. 54 at 10–11); U.S. Ctrs. for Disease Control and Prevention, *People Who Are at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last reviewed April 20, 2020) (warning that those who are at high-risk for severe illness include people with certain underlying medical conditions). But FDC SeaTac, the facility in which Mr. Carrillo Lopez is detained, has not experienced a known case of COVID-19 and is taking serious measures to reduce the risk of infection. (*See* Dkt. No. 56 at 10). The Court acknowledges Mr. Carrillo Lopez's heightened risk for COVID-19 complications. But Mr. Carrillo Lopez's personal risk does not change the fact

---

[6] At his previous detention hearings, Mr. Carrillo Lopez claimed to be a member of a high-risk population due to his asthma, type 2 diabetes, and obesity, but until now did not provide medical records to support this contention. (*See* Dkt. No. 54 at 10–11.)

that his alleged offenses weigh strongly against his pretrial release. Therefore, even in light of the COVID-19 crisis, the Court FINDS that pretrial detention is appropriate.

### III. CONCLUSION

For the foregoing reasons, the Court hereby DENIES Mr. Carrillo Lopez's motion for review and revocation of the detention order (Dkt. No. 54).

DATED this 22nd day of June 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE